UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| ADNAN YASSIN, a/k/a EDDIE YASSIN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 16-12280-DJC |
| AR ENTERPRISES, LLC, and ADNAN RAHIM, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                              December 28, 2017

### I. Introduction

Plaintiff Adnan Yassin a/k/a Eddie Yassin ("Yassin") has filed this lawsuit against Defendants AR Enterprises, LLC ("AR") and Adnan Rahim ("Rahim") (collectively, "Defendants"), alleging claims for breach of contract ("Count I"), quantum meruit ("Count II") and forced labor in violation of the Trafficking Victims Protection Act ("TVPRA") under 18 U.S.C. § 1589 ("Count III"). D. 1-1. Defendants have moved for partial summary judgment as to all Counts against AR and Count III against Rahim. D. 39. For the reasons stated below, the Court ALLOWS IN PART AND DENIES IN PART the motion.

### II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.    Factual Background**

Both parties submitted statements of fact. D. 41; D. 42 at 2-5. Yassin did not respond to Defendants' statement of undisputed facts. However, Yassin's statement of facts, D. 42 at 2-5, and his affidavit, D. 42-1, reflect specific evidence indicating a dispute about some material facts. Accordingly, the Court considers the material facts submitted by both parties.

Both Yassin and Rahim moved to the United States from Syria in 1991. D. 41, ¶¶ 1-2. In 2011, Yassin received Temporary Protected Status ("TPS"), a temporary immigration status offered to foreign nationals temporarily prevented from returning safely to their home country due to temporary conditions such as ongoing conflict and environmental disaster. Id., ¶ 25; D. 42, ¶ 2; see Temporary Protected Status, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/humanitarian/temporary-protected-status (last updated December 28,

2017).  Yassin and Rahim met in or around 1991, at which time Rahim helped Yassin to get a job as a dishwasher.  D. 41, ¶¶ 3-4.  Yassin spent time with Rahim's family and the two men were on friendly terms.  Id., ¶¶ 5-10.  Beginning in 1994 until sometime after 2000, Yassin sustained physical injuries as a result of a mugging, injuries from which caused him to be sent to the hospital, as well as a workplace accident.  Id., ¶¶ 11-13.  Yassin was totally incapacitated by his workplace injury.  Id., ¶ 13.  While incapacitated, Yassin could not support himself financially and lived with a mutual friend of his and Rahim's, Ousama Aamar ("Aamar").  Id., ¶¶ 15-16.  Aamar and Rahim loaned Yassin money during this time.  Id., ¶¶ 17, 21.

In 2001, Rahim opened a gas station as a sole proprietorship located in Arlington, Massachusetts ("Arlington Gulf").  Id., ¶ 14.  On December 14, 2012, Rahim formed AR to cease operating Arlington Gulf as a sole proprietorship.  Id., ¶ 36.  Yassin was employed at Arlington Gulf from May 2009 until November 2012.  D. 42, ¶ 3.  While employed at Arlington Gulf, Yassin drove himself to and from work each day.  D. 41, ¶ 27.  Yassin's responsibilities at the gas station included pumping gas, selling items in the snack shop, cleaning, keeping inventory and driving customers' cars to various off-site mechanics.  D. 41-7 at 6; D. 42, ¶ 4.  Yassin was paid $10 an hour in cash for pumping gas, but was not paid for his other responsibilities.  D. 41-7 at 6; D. 42, ¶ 7.  Yassin generally worked from noon until 9 p.m. pumping gas, but frequently stayed later or arrived earlier to fulfill his other unpaid responsibilities.  D. 42-1, ¶¶ 5-6.  Defendants dispute that Yassin was employed at Arlington Gulf, but do not offer any admissible evidence in support of their position asserted at the motion hearing that Yassin was "helping" at Arlington Gulf, rather than performing work commanded by another.  See United States v. Callahan, 801 F.3d 606, 620 (6th Cir. 2015), cert. denied sub nom. Hunt v. United States, 136 S. Ct. 1477 (2016) (defining "labor or services" for purposes of TVPRA).  Accordingly, for the purposes of the summary

judgment motion, the Court considers the term "labor or services . . . in accord with its ordinary meaning." Callahan, 801 F.3d at 620 (quoting United States v. Marcus, 628 F.3d 36, 44 (2d Cir. 2010)).

Another employee at Arlington Gulf who witnessed Yassin and Rahim's interactions during this time had not witnessed anything of a negative tenor. D. 41, ¶ 28. This is disputed by Yassin, who recalled Rahim asking him to pick up oxycodone prescriptions from a pharmacy on his behalf, which Yassin refused to do. Id., ¶ 31. Yassin testified that when he refused, on both occasions Rahim called him a "slave" and "mule," and threatened to report him to immigration. D. 41-7 at 8; D. 42, ¶ 11. Rahim testified that he did not threaten Yassin. D. 42-2 at 3. The nature of these insults is also disputed, because Aamar characterizes the insults as jokes between friends, D. 41-4 at 5, while another employee said that he considers the word "slave" in Arabic to be an insult that he does not often hear used. D. 41-6 at 3. On multiple other occasions, Yassin asked Rahim to be paid for all of his responsibilities working at Arlington Gulf, and in response Rahim said that if he tried to do anything about the nonpayment, Rahim would report Yassin to immigration and he would be deported because he did not have a green card. D. 41-7 at 8. As explained above, this is disputed by Rahim's testimony. D. 42 -2 at 3. Yassin testified that he took these threats seriously, believing that without a green card his immigration status would not allow him to legally work elsewhere. D. 42-1, ¶ 9. Rahim testified that he believed Yassin was subject to a pending deportation case and that he knew Yassin was concerned about being deported. D. 42-2 at 3.

**IV.     Procedural History**

Plaintiffs instituted this action in Middlesex Superior Court on October 24, 2016. D. 1-1. Defendants removed the case to this Court on November 14, 2016. D. 1. The parties proceeded

with discovery. Defendants have now moved for summary judgment. D. 39. The Court heard the parties on the pending motion on November 1, 2017, and took this matter under advisement. D. 43.

## V. Discussion

### A. AR – Corporate Existence at Time of Conduct

Defendants argue that AR, which was formed on December 14, 2012, cannot be liable for any of Yassin's claims, which arise from his work at Arlington Gulf between May 2009 and November 2012. Yassin does not dispute this argument. D. 42 at 14-15. Accordingly, Defendants' motion is allowed as to all counts against AR.

### B. Rahim – Count II

Defendants also contend that summary judgment should be allowed as to Count III against Rahim. The TVPRA prohibits "knowingly provid[ing] or obtain[ing] the labor or services of a person by," in pertinent part, "means of serious harm or threats of serious harm to that person or another person;" or "by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589(a), (a)(2)-(3).[1] The TVPRA includes a statutory private right of action. 18 U.S.C. § 1595. The TVPRA defines serious harm as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding

---

[1] The TVPRA also prohibits "knowingly provid[ing] or obtain[ing] the labor or services of a person . . . by means of force, threats of force, physical restraint to that person or another person," 18 U.S.C. § 1589(a)(1), or "by means of any scheme, plan or pattern intended to cause the person to believe that, if that person did not perform such services, that person or another person would suffer serious harm or physical restraint," 18 U.S.C. § 1589(a)(4). In their brief, Defendants suggest that the statute only applies to force, physical restraint, serious harm, threats, or improper schemes in providing or obtaining labor or services. D. 40 at 7. Section 1589 covers a broader range of activities, including abuse or threatened abuse of law or legal process as well as nonphysical "serious harm" such as psychological, financial, or reputational. See 18 U.S.C. § 1589(c).

5

circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). The TVPRA defines abuse of law or legal process as "use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

Defendants argue that Yassin's forced labor claim fails for three reasons. D. 40 at 7-12. First, Defendants contend that the record shows an undisputedly friendly relationship between Yassin and Rahim. Second, they contend that the record shows Yassin was free to stop working at Arlington Gulf, driving himself to and from work. These facts, even if undisputed, do not bar a forced labor claim at summary judgment. See Guobadia v. Irowa, 103 F. Supp. 3d 325, 335 (E.D.N.Y. 2015). When considering whether a threat of serious harm is sufficient to support a TVPRA claim, the Court looks to whether the totality of the circumstances would "compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). In other words, the fact finder must evaluate all of the circumstances that might bear on the reasonableness of Yassin's decision to continue working at Arlington Gulf and evidence of a friendly relationship or certain freedom of movement do not resolve this determination as a matter of law. Moreover, evidence of freedom to come and go would be more probative in a case that did not involve threats of deportation or other abuse of legal process. See Headley v. Church of Scientology Int'l, 687 F.3d 1173, 1179-80 (9th Cir. 2012) (emphasizing the freedom to come and go as a factor favoring summary judgment dismissing a claim that only alleged threats of serious harm). However, in a case where the record demonstrates a genuine issue of fact as to whether the

6

plaintiff was threatened with deportation, as is alleged here, the tenor of the relationship and the freedom of movement are less probative. See Guobadia, 103 F. Supp. 3d at 336; Elat v. Ngoubene, 993 F. Supp. 2d 497, 529-30 (D. Md. 2014). Accordingly, Defendants' evidence that Yassin may have had a friendly relationship with Rahim in the past and that he freely came to and from work at Arlington Gulf do not bar Yassin's claim as a matter of law.

Third, Defendants contend that because Yassin had received TPS, he was authorized to remain in the United States and by inference could not reasonably fear a threat of deportation by Rahim. D. 40 at 10-11. A threat of deportation can act as a threatened serious harm under § 1589(a)(2) or threatened abuse of legal process under § 1589(a)(3). See United States v. Calimlim, 538 F.3d 706, 709-11 (7th Cir. 2008); Guobadia, 103 F. Supp. 3d at 335-36; Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013); Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd., 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011); United States v. Garcia, No. 02-CR-110S-01, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003). Even a single threat of deportation can be sufficient to support such a claim when the totality of the circumstances would allow a jury to find that the plaintiff did not understand that there was "any other option." Elat, 993 F. Supp. 2d at 530; see Aguirre, 961 F. Supp. 2d at 444. Furthermore, nothing in the text of § 1589 nor the decisions of other courts indicates that these threats are only actionable against undocumented immigrants. To the contrary, several courts have found a genuine issue of fact where the plaintiff had acquired legal status in the United States. See, e.g., Elat, 993 F. Supp. 2d at 508; Aguirre, 961 F. Supp. 2d at 433-34; Antonatos v. Waraich, No. 1:12-cv-01905-JMC, 2013 WL 4523792, at *1-2, 5 (D.S.C. Aug. 27, 2013).

The record before the Court shows a jury could find Rahim's multiple threats of deportation in response to Yassin's, *inter alia*, refusal to run his personal errands and requests that he be paid

7

for his labor were either threats of serious harm or threatened abuse of law or legal process in violation of the TVPRA. Rahim testified that he was aware of the temporary nature of Yassin's immigration status, and a jury could draw a reasonable inference between this knowledge and both his threats and his characterization of Yassin's labor not as employment, but as informal help. Furthermore, Yassin testifies that he took these threats credibly and was concerned not only about deportation, but about his ability to find other work. While TPS recipients are eligible for employment authorization, see Temporary Protected Status, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/humanitarian/temporary-protected-status (last updated December 28, 2017) (explaining that TPS does not include employment authorization, but allows the recipient to apply separately), it is unclear from the record whether Yassin had received employment authorization. However, in either case, lacking any expertise or knowledge of immigration, having been reliant on Rahim in their relationship, including owing him and others money, and being unable to find other work, see D. 42-1, ¶ 10, looking at the totality of the circumstances a jury could find it was reasonable for Yassin to continue his unpaid work at Arlington Gulf for fear of the serious harm or abuse of legal process from a threatened deportation.

The cases Defendants rely on in support of this argument are inapposite. In Muchira v. Al-Rawaf, 850 F.3d 605 (4th Cir. 2017), as amended (Mar. 3, 2017), the Fourth Circuit affirmed a grant of summary judgment for defendants who, when bringing a maid to the United States with them from Saudi Arabia, told her to tell the United States Embassy in her visa interview that she would be paid more than she had agreed to be paid by contract. Id. at 615. The court noted, in relevant part, that the plaintiff's claim failed under either a threatened serious harm or abuse of legal process theory because no evidence in the record showed that the defendants had threatened her with adverse legal consequences such as deportation. Id. at 619-20, 623. Furthermore, the

court noted that the plaintiff had been "complicit" in the deception in her visa interview, and no evidence indicated she had been coerced or threatened to lie in the interview. Id. at 623. In this case, the record shows there is a genuine dispute as to whether Yassin was threatened with deportation on multiple occasions, and no evidence indicates he was complicit in the underpaid circumstances of his employment. Headley, 687 F.3d 1173, which Defendants also relied upon, is inapposite because there was no allegation of abuse or threatened abuse of legal process, as is alleged here. Id. at 1178. The Ninth Circuit explained that the consequences the plaintiffs feared, such as disconnection from their family and friends, did not constitute threats of serious harm under the TVPRA. Id. at 1180.

Accordingly, Count III against Rahim survives and Defendants' motion is denied on this basis.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS IN PART AND DENIES IN PART Defendants' motion for summary judgment, D. 39.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge