UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ADNAN YASSIN a/k/a EDDIE YASSIN,<br>*Plaintiff,*<br>v.<br>AR ENTERPRISES, LLC, and ADNAN RAHIM,<br>*Defendants.* | ) | Civil Action No. 1:16-CV-12280-DJC |

**Plaintiff's Motion to Compel Production of Documents in Connection with Claim for Punitive Damages Under the TVPA**

**Introduction**

Plaintiff Adnan Yassin hereby moves the Court, pursuant to Fed. R. Civ. P. 37 and 45, to enter an order: (1) compelling Defendant Adnan Rahim to produce the documents requested in Plaintiff's Second Request for Production of Documents, a copy of which is attached hereto as Exhibit A; (2) authorizing and directing two nonparty witnesses (Merrimack Mortgage Company, Inc. and Cambridge Savings Bank) to comply with document subpoenas previously served on them, copies of which are attached hereto as Exhibit B and C. The document request and the subpoenas deal with the financial condition, income and assets of Defendant Rahim[1],

[1] To the extent that the documents requested concern the income and assets of AR Enterprises LLC and 85 River Street LLC, they are relevant to the financial condition of Defendant Rahim, who is the owner of these entities, either solely or jointly with his wife. AR Enterprises operates Arlington Gulf, which was

which is subject to discovery in connection with the upcoming trial of Plaintiff's claim for punitive damages under the Trafficking Victims Protection Act ("TVPA") and in particular 18 U.S.C. §1589.

On May 18, 2017, the Court (Bowler, M.J.) granted the Defendant's motion to quash the subpoenas served on Merrimack Mortgage Company and Cambridge Savings Bank. The motion was granted without prejudice and Magistrate Bowler specifically stated that the motion was premature, and could be renewed following summary judgment:

THE COURT: I think it's premature at this time. It's denied without prejudice, can be renewed later in the case. At this time, denied.

MR. LEVEY: Thank you, your Honor.

THE COURT: So the motion to quash is granted.

MR. BROWN: Your Honor, there's about two months left in discovery.

THE COURT: Well, as to, you know, collection of damages I think further down the road after summary judgment, I think when you go back to Judge Casper you can discuss this. But at this time it's denied without prejudice.

See Exhibit D, transcript of hearing, 5/18/17.

Given the ruling of Magistrate Bowler with respect to the two subpoenas, Plaintiff did not move at that time to compel production of the documents sought by the second document request.

By order dated December 28, 2017, the Court (Casper, J.) denied the Defendant's motion for summary judgment with respect to Count III of the Complaint which alleges that the Defendant violated the Trafficking Victims Protection Act ("TVPA") and in particular 18 U.S.C. §1589. Accordingly the TVPA claim will be tried along with the remainder of the

---

previously a sole proprietorship of Defendant Rahim, and 85 River Street owns the real estate occupied by Arlington Gulf. See summary judgment decision, 12/28/17 at 3, ECF no. 44.

claims and counterclaims. A pretrial conference is scheduled for February 27, 2018. As set forth below, punitive damages are available under the TVPA and it is black-letter law that a defendant's financial condition and net worth are relevant, admissible and subject to discovery in connection with a claim for punitive damages.

**Factual Background**

As stated in the Court's summary judgment decision of December 28, 2017, Plaintiff has submitted evidence of the following facts, most or all of which are disputed by the Defendant:

Yassin was employed at Arlington Gulf from May 2009 until November 2012. D. 42, ¶ 3. Yassin's responsibilities at the gas station included pumping gas, selling items in the snack shop, cleaning, keeping inventory and driving customers' cars to various off-site mechanics. D. 41-7 at 6; D. 42, ¶ 4. Yassin was paid $10 an hour in cash for pumping gas, but was not paid for his other responsibilities. D. 41-7 at 6; D. 42, ¶ 7. Yassin generally worked from noon until 9 p.m. pumping gas, but frequently stayed later or arrived earlier to fulfill his other unpaid responsibilities. D. 42-1, ¶¶ 5-6. Defendants dispute that Yassin was employed at Arlington Gulf, but do not offer any admissible evidence in support of their position asserted at the motion hearing that Yassin was "helping" at Arlington Gulf, rather than performing work commanded by another.

Yassin … recalled Rahim asking him to pick up oxycodone prescriptions from a pharmacy on his behalf, which Yassin refused to do. Id., ¶ 31. Yassin testified that when he refused, on both occasions Rahim called him a "slave" and "mule," and threatened to report him to immigration. D. 41-7 at 8; D. 42, ¶ 11.

On multiple other occasions, Yassin asked Rahim to be paid for all of his responsibilities working at Arlington Gulf, and in response Rahim said that if he tried to do anything about the

nonpayment, Rahim would report Yassin to immigration and he would be deported because he did not have a green card. D. 41-7 at 8. Yassin testified that he took these threats seriously, believing that without a green card his immigration status would not allow him to legally work elsewhere. D. 42-1, ¶ 9. Rahim testified that he believed Yassin was subject to a pending deportation case and that he knew Yassin was concerned about being deported. D. 42-2 at 3.

As evidenced by the Court's denial of the summary judgment motion, these facts (if proven at trial) would enable Plaintiff to prevail on his claim for violation of the TVPA, 18 U.S.C. §1589.

**Applicable law under the TVPA**

The relevant provision of the TVPA, 18 U.S.C. §1589, prohibits obtaining the labor of another by means of threats of harm and abuse of the legal process. Specifically, §1589 (together with 18 U.S.C. §1595) imposes civil liability on a defendant who obtains the labor or services of a person by: (1) force, threats of force, physical restraint, or threats of physical restraint; (2) serious harm or threats of serious harm; (3) abuse or threatened abuse of law or legal process; or (4) a scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

This is precisely what took place here. When the Plaintiff sought to be paid for his work, the Defendant threatened him with "serious harm" and with "abuse of law or legal process."

As the Court held in its summary judgment decision:

> A threat of deportation can act as a threatened serious harm under § 1589(a)(2) or threatened abuse of legal process under § 1589(a)(3). See *United States v. Calimlim*, 538 F.3d 706, 709-11 (7th Cir. 2008*); Guobadia*, 103 F. Supp. 3d at 335-36; *Aguirre v. Best Care Agency, Inc*., 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd*., 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011); *United States v. Garcia*, No. 02-CR-110S- 01, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003). Even a single threat of deportation can be sufficient to support such a claim when the totality of the circumstances would allow a jury to find that the plaintiff did not understand that there was "any other option." *Elat*, 993 F. Supp. 2d at 530; see *Aguirre,* 961 F. Supp. 2d at 444…
>
> The record before the Court shows a jury could find Rahim's multiple threats of deportation in response to Yassin's, *inter alia*, refusal to run his personal errands and requests that he be paid for his labor were either threats of serious harm or threatened abuse of law or legal process in violation of the TVPRA. Rahim testified that he was aware of the temporary nature of Yassin's immigration status, and a jury could draw a reasonable inference between this knowledge and both his threats and his characterization of Yassin's labor not as employment, but as informal help. Furthermore, Yassin testifies that he took these threats credibly and was concerned not only about deportation, but about his ability to find other work ….[L]ooking at the totality of the circumstances a jury could find it was reasonable for Yassin to continue his unpaid work at Arlington Gulf for fear of the serious harm or abuse of legal process from a threatened deportation.

**Punitive damages are available under the TVPA**

Numerous courts, including two circuit courts of appeal, have held that punitive damages may be awarded under the TVPA. *See Ditullio v. Boehm,* 662 F.3d 1091, 1096 (9th Cir.2011); *Francisco v. Susano*, 525 Fed.Appx. 828, 833-34 (10th Cir. 2013); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2012); *Rana v. Islam*, 210 F. Supp. 3d 508 (S.D.N.Y. 2016); *Alabado v. French Concepts, Inc.*, 2016 WL 5929247, at *13 (C.D. Cal. May 2, 2016); *Macolor v. Lib*iran, 2016 WL 1488121, at *5–6 (S.D.N.Y. Mar. 25, 2016); *Lagasan v. Al–Ghasel*, 92 F.Supp.3d 445, 458 (E.D.Va.2015). Plaintiff is not aware of any decision to the contrary.

As the 9th Circuit held in *Ditullio*, "[p]unitive damages are generally appropriate under the TVPA civil remedy provision because it creates a cause of action for tortious conduct that is ordinarily intentional and outrageous." 662 F.3d at 1098. The conduct of the Defendant in this case could certainly be found to be both intentional and outrageous. Moreover, punitive damages are appropriate here because they are awarded "to punish [the Defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 996-997.

**The defendant's financial condition is relevant and subject to discovery in cases involving a claim for punitive damages**

As the Supreme Court has held, a defendant's wealth is one factor that the jury may consider in determining punitive damages. *TXO Production Corp. v. Alliance Resources Corp.,* 113 S.Ct. 2711, 2723 (1993). As such, "[s]ince evidence of a defendant's wealth may be admissible at trial, as it relates to punitive damages, courts have allowed the discovery of financial information on those grounds." *In re Aqua Dots Products Liability Litigation*, 270 F.R.D. 322, 324 (N.D. Ill. 2010). In the following cases, courts ruled that the plaintiff was entitled to discovery concerning the defendant's financial condition based on the assertion of a clam for punitive damages: *Am. Auto. Ins. Co. v. Haw. Nut & Bolt, Inc*.. 2017 WL 80248 (D. Haw., January 9, 2017); *Todd v. AT&T Corp.*, 2017 WL 1398271 (N.D. California 2017); *U.S. Equal Emp't Opportunity Comm'n v. Pioneer Hotel, Inc*., 2014 WL 5045109 (D. Nev., October 9, 2014); *In re Heparin Products Liability Litigation*, 73 F.R.D. 399 (N.D. Ohio, 2011); *Moe v. System Transport, Inc.*, 270 F.R.D. 613 (D. Montana, 2010); *In Re Aqua Dots Products Liability Litigation*, 270 F.R.D. 322 (N.D. Illinois, 2010); *EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009); *Lane v. Capital Acquisit*ions, 242 F.R.D. 667, 670 (S.D.Fla. 2005); *Caruso v. Coleman Company*, 157 F.R.D. 344 (E.D. Pa. 1994).

Given that Plaintiff is entitled to offer evidence at trial concerning the Defendant's wealth, he is plainly entitled to discovery on that subject. Absent such discovery, Plaintiff has no means of obtaining such evidence.

**Any argument that this issue was disposed of by the prior motion to quash is unavailing**

Since the Defendant will not be able to oppose this motion on the merits, he may argue that this issue was disposed of by Magistrate Bowler's ruling on the motion to quash. However, as the hearing transcript makes clear, the motion was denied without prejudice, and Magistrate Bowler made it clear that the Plaintiff could raise the issue again before the trial judge if the TVPA claim survived summary judgment.

**Plaintiff is willing to enter into an agreed-upon confidentiality order**

Plaintiff is willing to enter into an agreed-upon confidentiality order restricting the use and dissemination of the Defendants' confidential personal financial information, subject to the caveat that the information may be introduced into evidence at trial.

**Conclusion**

For all of the foregoing reasons, Plaintiff respectfully requests that his motion to compel be allowed and that the Court enter an order: (1) compelling Defendant Adnan Rahim to produce the documents requested in Plaintiff's Second Request for Production of Documents, a copy of which is attached hereto as Exhibit A; (2) authorizing and directing two nonparty witnesses (Merrimack Mortgage Company, Inc. and Cambridge Savings Bank) to comply with document subpoenas previously served on them, copies of which are attached hereto as Exhibit B and C.

PLAINTIFF
By his attorneys,

/s/ Howard M. Brown

Howard M. Brown, BBO# 547948
hmb@bostonemploymentlaw.com
Boston Employment Law PC
1170 Beacon Street, Suite 200
Brookline, MA 02446
(617) 566-8090 (telephone)
(617) 566-8091 (facsimile)

## CERTIFICATION PURSUANT TO LOCAL RULE 37.1

I hereby certify that on January 2, 2018, I attempted to resolve the discovery dispute which is the subject of this motion with counsel to Defendants, but was unable to resolve the dispute.

/s/ Howard M. Brown
Howard M. Brown, BBO #54748

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2018, a true and accurate copy of the foregoing document was served upon all counsel of record using the Court's ECF System.

/s/ Howard M. Brown
Howard M. Brown, BBO #547948